UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABDUL KARIM BANGURA, )
)
Plaintiff, )
)
v. ) Civil Case No. 15-1529 (RJL)
)
HOWARD UNIVERSITY, ET AL., )
) **FILED**
Defendants. )
AUG -2 2016

MEMORANDUM OPINION
(August 2, 2016) [Dkt. #5]

Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

Plaintiff Abdul Karim Bangura ("plaintiff" or "Bangura") is a political science scholar who was born in Sierra Leone and immigrated to the United States decades ago. He alleges that while employed as a faculty member in the political science department at Howard University ("the University") he was discriminated against because of his race, color, religion, and national origin. Compl. ¶¶ 1, 33 [Dkt. #1].[1] While employed as an adjunct faculty member, Bangura applied for a tenure-track position on multiple occasions, never with any success. The University instead gave him the position of "lecturer," which position he held for eight years before the University declined to renew his contract. Bangura filed suit against Howard University and the three individual

---

[1] The complaint suggests that in addition to being African, Bangura is black. *See* Compl. ¶ 18 (suggesting a "non-African/Black" professor discriminated against Bangura). Plaintiff's opposition memorandum reinforces this suggestion. *See* Pl.'s Opp'n to Defs.' MTD 11 [Dkt. #9] ("[P]eople from Sierra Leone are Black Africans."). But neither the complaint nor the opposition memorandum discuss, or even specify, Bangura's religion. The Court, therefore, assumes Bangura no longer intends to advance a religious discrimination claim.

decision-makers who were responsible for these employment actions (collectively "defendants"), claiming the actions violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Compl. ¶¶ 32-34. Bangura also makes two common law claims, for wrongful discharge and intentional infliction of emotional distress. Compl. ¶¶ 35-49. This matter is before the Court on defendants' Motion to Dismiss the complaint in its entirety [Dkt. #5]. Upon consideration of defendants' motion, related briefings, and the entire record of this case, the Motion to Dismiss is GRANTED.

## FACTUAL BACKGROUND

Howard University first hired Bangura as an adjunct faculty member in 1998. He applied for a tenure-track position for the first time in 2006. Bangura was not selected for the position, but nevertheless began a full-time lecturing load in the fall of 2007. According to Bangura, the chair of the political science department assured him at that time that he could continue to be considered for tenure-track positions. Bangura continued to teach full time, intermittently making inquiries about the opportunity to "rectify" his employment status. Compl. ¶ 15.

In the fall of 2013, Bangura again applied for an available tenure-track position. *Id.* ¶ 16. Bangura learned however that his name was not on the list of applicants considered by the search committee for that position. Bangura suspected that a non-African/Black professor had discriminated against him by removing his application from

the pool. As such, Bangura raised this concern with the University's administration, apparently without resolution. *Id.* ¶¶ 20-21.

At the end of the 2013-14 school year, the University informed Bangura that after seven years of full-time teaching without a tenure-track position, his term as a temporary lecturer was due to expire. They did acknowledge, however, that because they had failed to give him the proper notice, they would extend his contract for one additional school year. Bangura claims that he knows of "other faculty" who were "reemployed" by the University even after being employed for over seven years as lecturers. Compl. ¶ 27.

In February 2015 Bangura applied for another tenure-track position that had become available, notwithstanding the warning he had been given of non-renewal. He claims his name was again not among those that the search committee received. In March 2015 the University informed Bangura that he was not eligible to apply for a tenure-track position because he was terming out as a non-tenured faculty member. Plaintiff contends, however, that there was no such policy memorialized in the University Faculty Handbook at the time.

In April 2015, Bangura filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that he was denied a tenure-track position and relegated to the inappropriate rank of lecturer on the basis of his protected characteristics. The EEOC reached no determination as to the complaint, but informed Bangura of his right to sue in June 2015. Within the ninety days specified by the EEOC notice, Bangura filed this suit.

**DEFENDANTS' MOTION TO DISMISS**

Defendants, in moving to dismiss Bangura's complaint, argue that Bangura is time-barred from bringing Title VII claims based on the adverse employment events that he alleges occurred prior to 2015. As such, defendants contend the only Title VII claim that the Court should review for substance is Bangura's allegation that defendants discriminated against Bangura when they declined to review his application for a tenure-track position in February 2015 and subsequently let his lecturer contract lapse. Defendants argue that this claim does not pass muster under Federal Rule of Civil Procedure 12(b)(6) because Bangura does not allege any facts that could establish that these adverse employment actions were motivated by Bangura's color, race, or national origin, rather than by legitimate hiring policies or priorities. Finally, if the Court dismisses Bangura's Title VII claims, defendants additionally urge the Court to decline supplemental jurisdiction over the common law claims, as is the court's prerogative under 28 U.S.C. § 1367.

**ANALYSIS**

I. **It Is Too Late for Plaintiff to Challenge, Under Title VII, Either His 2007 Designation as a Lecturer or the Outcomes of His 2006 and 2013 Tenure-Track Applications.**

Defendants are correct that plaintiff may not pursue Title VII relief for employment practices that "occurred" more than 300 days *before* April 2015, when he made a charge of discrimination to the EEOC. 42 U.S.C. § 2000e-5(e)(1). Plaintiff

4

argues that the defendants are nonetheless "potentially liable" for acts predating the 300 days, citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), as support. Unfortunately for the plaintiff, that case unequivocally forecloses any Title VII claims based on the events of 2006 through 2013.

In *National Railroad*, the Court drew a distinction between discrete employment acts and ongoing hostile work environments, each of which can give rise to Title VII claims. For a discrete employment act, the employer is entitled after 300 days elapse to consider the lawfulness of the act undisputed. *Id.* at 112 (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)). The Court explained that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and a plaintiff may "only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *Id.* at 114. Bangura's attempt to challenge his designation as a lecturer and the outcomes of his 2006 and 2013 tenure-track applications as part of an ongoing discriminatory plan or a hostile work environment that persisted through 2015 is inconsistent with the reasoning in *National Railroad*. Put simply, these events were either failures to promote or refusals to hire, which the Supreme Court has explicitly categorized as "discrete acts." Plaintiff is therefore too late to challenge them now under Title VII.

Plaintiff next asks the Court to invoke equitable tolling to revive these claims. *National Railroad* is again instructive. Although the equitable doctrines of estoppel and tolling can apply to a Title VII claim that would otherwise be time-barred, "they are to be

5

applied sparingly." *Id.* at 113. Equity counsels tolling only when an extraordinary circumstance prevents plaintiff from meeting a deadline. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Here, plaintiff contends that equity counsels in his favor because "[d]efendants' actions misle[]d the plaintiff" by suggesting that he could resolve his concerns over his employment status within the University's normal procedures, for instance by applying for subsequent tenure-track openings. Pl.'s Opp'n 13. But plaintiff does not even allege defendants misrepresented the career avenues available to him. Indeed it is undisputed that, in 2006 at least, Bangura *could* continue to apply for tenure-track positions; and plaintiff does not allege that defendants promised he would be successful or that they otherwise misinformed him as to the limitations on applying for a tenure-track spot. At most, defendants failed to warn him of the limitations he would eventually face if he became a long-term lecturer, but that is not so extraordinary a circumstance as to warrant equitable relief. Moreover, if the discrete acts of 2006 through 2013 were discriminatory, plaintiff was required to make a charge putting the University on notice even while pursuing other solutions. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period.").

Accordingly, in evaluating the sufficiency of plaintiff's Title VII claims, I will confine my analysis to the events of 2015, when the University rejected Bangura's final

6

application for a tenure-track position and terminated his contract as a temporary lecturer.[2]

## II. Plaintiff Does Not Allege Facts Related to the Events of 2015 that Amount to a Title VII Claim Against Defendants.

Defendants move to dismiss Bangura's remaining Title VII claims on the ground that his allegations regarding the events of 2015 do not constitute plausible claims of discrimination. Bangura alleges with respect to the employment actions taken against him in 2013 that a single individual with discriminatory motive and tendencies removed his application from the group passed on to the search committee. By contrast, plaintiff's allegations with respect to the events of 2015 are much less specific. He contends that the University concocted a phony policy that limited the opportunities of long-term, full-time lecturers and then applied that policy to him but not to others, as a cover for some unidentified source of discrimination. *See* Pl.'s Opp'n 10-12. As such, Bangura's only "evidence" of the discrimination he alleges is that he experienced disparate treatment when the University applied the seven-years-and-out policy to him.

But as defendants point out, Bangura has not alleged sufficient facts for a disparate treatment claim because he does not identify the characteristics of the supposed employees who escaped the seven-years-and-out policy. *See* Defs. Mem. 13-17. A crucial element of a disparate treatment claim is that someone similarly situated to the

---

[2] Because Bangura's 2013 tenure-track application is so clearly outside the time limit, I need not reach defendants' argument that plaintiff did not exhaust his administrative remedies with regard to it. *See* Defs.' Mem. 12-13 [Dkt. #5-1].

plaintiff, except with respect to his protected characteristics, was treated more favorably than him. *Neuren v. Adduci, Mastrani, Meeds & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995). Such evidence would be the only thing in a claim such as Bangura's to distinguish discrimination from an employment action that was motivated by the individual characteristics that employers can fairly consider. Here, Bangura does not allege that the "other faculty" who stayed on after seven years were full-time lecturers or otherwise similarly situated to him. He does not even specify in what capacity they were hired to stay on. Moreover, he does not specify whether they were allowed to stay on in the same timeframe that the University claims to have adopted the policy. Perhaps most important, Bangura does not allege that the University treated them more favorably because they did not share Bangura's race, color, or national origin. Amazingly, the complaint does not even specify the race, color, or national origin of the faculty members who were allegedly allowed to stay on as lecturers after seven years. Without these sorts of details, plaintiff's claim of discrimination is neither plausible nor actionable. All he has done is to raise discrimination as one of the many possibilities that would explain the University's decision not to re-hire or promote him to a tenure-track position. That, unfortunately, is not enough to sustain a legal action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (A court must dismiss a complaint that "stops short of the line between

possibility and plausibility of entitlement to relief."). Accordingly, I must dismiss the remaining Title VII claims under Rule 12(b)(6).[3]

## CONCLUSION

For the foregoing reasons, I hereby GRANT defendants' Motion to Dismiss the complaint in its entirety. An order consistent with this decision accompanies this Memorandum Opinion.

_____<br>
RICHARD J. LEON<br>
United States District Judge

---

[3] Because none of plaintiff's Title VII claims survive both the time-bar and Rule 12(b)(6), there is no occasion to address defendants' argument that the Title VII claims cannot lie against the individual defendants. See Defs.' Mem. 10. With respect to plaintiff's common law claims, defendants request that the Court decline supplemental jurisdiction once it has decided to dismiss the Title VII claims. Under 28 U.S.C. § 1367(c)(3), the Court "may decline" supplemental jurisdiction once it dismisses all the claims that gave it original subject matter jurisdiction. Because plaintiff gives no reason why the Court should keep jurisdiction of the common law claims only, the Court treats the matter as conceded and GRANTS defendants' request to dismiss the remaining claims.